160 So. 800

TRANSPORTATION MUT. INS. CO. v. SOUTHERN SCRAP MATERIAL CO., Limited.

No. 32586.

April 1, 1935.

Spearing & McClendon, of New Orleans, for appellant.

Lazarus, Weil & Lazarus and Herman S. Lindy, all of New Orleans, for appellee.

LAND, Justice.

On April 13, 1921, the New Orleans Terminal Company leased to defendant, Southern Scrap Material Company, Limited, a certain piece or parcel of land, indicated on the map in the transcript, containing 56,316 square feet, more or less, together with the improvements located thereon.

The leased premises comprise the larger portion of a square in the city of New Orleans, bounded on the north by Conti street, on the east by David street, on the west by Solomon street, and on the south by Bienville street.

East of this square, in the next square across David street, are located the "Mule Barns."

In the southwest portion of this square, which is not covered by the lease, is located a dwelling house, near the west wall of defendant company's plant.

The building that was leased to defendant company was one of the old barns in Bienville street between David and Solomon streets, in the city of New Orleans, which had been occupied by defendant company as a junk yard since 1905, although the lease in question was entered into only on April 13, 1921.

About 6:30 o'clock in the evening, October 29, 1929, a fire of undetermined origin occurred in the building, which virtually destroyed it, with the exception of certain portions of the brick outer walls which are still standing.

The dwelling house, in the southwest portion of the square, and near the west wall of the building destroyed, was damaged only to a small extent.

The plaintiff insurance company paid the insured, the New Orleans Terminal Company, the loss, estimated at $13,123.05, and on April 12, 1930, that company assigned its claim or demand against defendant company to plaintiff insurance company. The present suit is predicated upon this assignment.

Plaintiff insurance company contends, of course, that the fire was the result of defendant company's gross negligence.

Defendant company, on the other hand, asserts that there were no sufficient allegations in the petition, and no proof in the record, of any *causal connection* between the acts of negligence alleged, and the fire which destroyed the building and damaged the dwelling house.

The exceptions of no cause or right of action filed by defendant company were overruled by the trial judge. The case was tried on the merits, and judgment was rendered in favor of defendant company, rejecting the demands of plaintiff insurance company at its costs.

From this judgment, plaintiff insurance company has appealed.

At the outset it is to be observed that it is conceded by counsel for plaintiff in their brief that *"no one knows the cause of this fire."* Brief, p. 25. (Italics ours.)

Then counsel for plaintiff argue the possibility or probability that "the fire started from the throwing of lighted cigarette butts or half burned matches on the *oil-soaked floor*, or on the old clothing of the laborers, or on the sacks, by men when changing their clothing preparatory to leaving the premises." But, in any event, counsel for plaintiff state that "it is certain that defendant corporation did not comply with the recommendations of the fire inspector and that the fire occurred from the use of the premises by defendant." Brief, p. 25.

There was no *"oil-soaked floor"* or *"oil-soaked platform"* in the rear of the building. The fact is that on this platform was an electrically operated automatic emery-wheel machine, to sharpen the edges of shears and

large blades used for cutting steel, iron, and other metals. Over this emery wheel was *a jet of water* constantly flowing while the machine was in operation, and, from the steady flow of water over the emery wheel, the floor of this small platform had become, and constantly remained, *water-soaked*, as shown by the testimony of the vice president, night watchman, superintendent of the plant, and several laborers.

It was on this platform that four or five of the negro laborers were accustomed to undress in the evening and leave their overalls and working clothes until the next morning, and where the inspector said he had from time to time observed a cigarette butt or a burnt match.

Besides, the record shows that defendant company had strict rules against smoking within the building and that every reasonable effort was made to enforce these rules.

It is a fact that, except for some $2,000 of insurance on its trucks, the defendant company did not have one cent of insurance on a large stock of metals, rubber, and kindred articles in the leased premises, valued at $50,000, which was totally lost in the fire.

It is also a fact that the night watchman, who is also charged with negligence by plaintiff insurance company, was operating a lunch counter in the leased premises, and suffered a loss of some $2,000 in the fire, without one dollar of insurance, occasioned by the complete destruction of his tables, counters and chairs, and store of goods.

Under such a state of facts, it is incredible that defendant company should have failed,

time and again, as charged by plaintiff insurance company, to keep its premises clean and free from all inflammable material, and to faithfully comply with such rules and regulations as may be prescribed, looking to the prevention of fires and compliance with insurance contracts and policies.

If defendant company was maintaining or permitting acts of negligence in the leased premises, insured by plaintiff insurance company, year in and year out, which were, in fact, a continuous fire hazard and menace, it is inexplicable that plaintiff insurance company did not cancel the policy, and that the New Orleans Terminal Company, the lessor, did not cancel the lease on the premises held by defendant company.

The building in question, belonging to the New Orleans Terminal Company, was built alongside one of its main switch tracks, *and into this very building were run two spur tracks from this switch*. The portion of the building near which the fire was first discovered was less than 15 feet from the spur tracks, and that end of the building less than 110 feet from this main switch track, and the entrance to the building was closed only by a lattice gate. Switch engines moved up and down this switch track at all hours of the day and night.

If mere possibility or probability as to the cause of the fire is to be resorted to in this case to show causal connection between the alleged negligence of defendant company and the injury, then may it not be a most plausible or a most likely explanation of the origin of this fire that it may have been caused by the emission of sparks from one of these railroad engines?

It is well settled that: "To recover damages for injuries sustained through the alleged fault of another, the fault, and the connection between the fault and the injuries, must be shown, *with reasonable certainty*. There can be no recovery where *only the possibility, or the probability*, of such fault and connection is shown." Rohr v. N. O. Gaslight Co., 136 La. 546, 67 So. 361, 364; Louisiana Digest, Verbo Negligence, § 41; Dotson v. Louisiana Central Lumber Co., 144 La. 78, 80 So. 205. (Italics ours.)

The contention of plaintiff insurance company that, if the fire extinguishers had been properly located and equipped, the fire *may have been* extinguished, is *a mere conjecture*, and is far from positive proof of an act of negligence, resulting in injury.

The night watchman, a reputable witness, testified that when he first saw the fire, within a few minutes after it broke out it was beyond extinguishment by any hand fire extinguishers.

This witness promptly turned in the fire alarm, and by the time the engines arrived, within five or six minutes, the place was engulfed in a rapidly spreading, all-consuming fire.

The assistant city fire chief testified that the unusual rapidity with which the fire spread was due to the inflammable character of the construction of the building and the heavily tarred roof.

This witness also testified to the futility of hand fire extinguishers, except in the incipiency of a small fire, and as to numerous fires that consumed large buildings, in spite of the presence and attempted use of fire ex-

tinguishers, inside hose, and the like. Tr., pp. 196–199, 200.

In our opinion, plaintiff insurance company has failed to establish, with reasonable certainty, any causal connection between the alleged faults of defendant company and the injury and, therefore, cannot recover.

In article XI of plaintiff insurance company's petition it is alleged that the New Orleans Terminal Company assigned to plaintiff "all of its right, title and interest in and to the claim or demand of the New Orleans Terminal Company against the Southern Scrap Material Company, Ltd., *whether by virtue of any lease agreement of April 13, 1921,* * * * *or by reason of negligence on the part of the Southern Scrap Material Company, Ltd., its employees or agents, or otherwise* arising as a result of the loss and destruction by fire of the building or barn hereinabove referred to."

The exception of defendant company calling upon plaintiff insurance company to elect which of its inconsistent demands it would pursue was overruled, as well as the exception of no right or cause of action tendered by defendant company.

For reasons already assigned, plaintiff insurance company cannot recover, if the cause of action arises ex delicto.

Nor can plaintiff insurance company sustain a cause of action ex contractu in this case, for the following reasons: There is no privity of contract whatever between plaintiff insurance company and defendant company, in so far as the lease of the New Orleans Terminal Company to defendant com-

pany is concerned. The insurance company is no party to this lease.

Moreover, had the lease been violated, because of breach of its terms as to fire hazard affecting the leased premises, the remedy of the New Orleans Terminal Company, the lessor, would have been by suit for its cancellation.

Judgment affirmed.