Plaintiff brought this suit for damages, under Article 2315 of the Revised Civil Code, for the death of her minor son, Paul O.J. Picou. She made defendants, in *Page 40 
solido Geo. A. Hormel Co., the owner of the truck which will hereinafter be referred to as the Hormel Truck, and its liability insurance carrier, Hartford Accident Indemnity Co., J.B. Luke's Sons, a commercial partnership, and the individual members thereof, the employer of the said minor son, hereinafter referred to as the Lukes. In the alternative, she seeks compensation under the Workmen's Compensation Act, Act No. 20 of 1914, as against the Lukes. As it can be readily seen, there are two sets of defendants represented by separate attorneys, that is, the Hormel Company and its insurance carrier and the Lukes.
Plaintiff alleges that her minor son, who was above the age of fourteen but below the age of sixteen years, while in the employ of the Lukes, who operated a general mercantile and grocery business, and while returning from making delivery of groceries on a bicycle, was run down and fatally injured by an automobile driven by Gilbert Mayea, who was driving back of the Hormel truck.
As against the Lukes, the plaintiff charges that her minor son was employed by the Lukes without compliance with the terms and provisions of Sec. 3 of Act No. 167 of 1932, amending Sec. 2 of Act 301 of 1908, that is, in failing to secure the age and employment certificate mentioned in the act, and sets out this fact as a cause of the accident.
As to the Hormel truck, the petition shows the facts to be as follows: The Hormel truck and Paul Picou, who, as stated before, was riding his bicycle on U.S. Highway No. 90, in the unincorporated village of Centerville, were both proceeding in a westerly direction, the bicyclist in front. Paul Picou was travelling on the extreme right hand side of the concrete slab, and when he reached a point just in front of the Protestant Parsonage, the most thickly populated part of the village, he was caused to leave the concrete slab and to ride his bicycle onto the dirt shoulder by the Hormel truck. After the Hormel truck had safely passed Paul, and had proceeded on its way, Paul then rode his bicycle back upon the concrete slab without looking behind him to determine whether any other vehicle was approaching from the east and also travelling in a westerly direction. Shortly thereafter, Gilbert Mayea, who was also travelling westward, sounded his horn to warn Paul Picou of his approach from the rear, and his intention to pass him. Picou then turned his head and observed the Mayea car apparently bearing down upon him from the rear. Picou failed to return to the dirt shoulder on his right hand or north side of the concrete slab, but steered his bicycle directly across to the south side or his left side of the concrete slab in an effort to avoid the oncoming automobile. At the same time, Mayea also drove his car to the left or south side of the concrete slab, in an effort to drive around Picou and avoid striking him, with the result that the right front fender of the automobile struck the front wheel of the bicycle at about the time the bicycle had reached the black center line of the concrete slab, knocking Picou from his bicycle and causing physical injuries from which he died.
The petition sets out that the Hormel truck driver was negligent in driving at a rate of speed exceeding 50 miles per hour through a most thickly populated part of the village, in failing to drive the truck to the left and around Picou, there being no oncoming traffic, in forcing Picou to take to the shoulder of the concrete slab, and in obstructing the view of any vehicle travelling in its rear.
Each set of defendants filed an exception of no cause and of no right of action, which exceptions were sustained by the District Judge and plaintiff's suit was ordered dismissed. Plaintiff has appealed. Defendants have filed a motion to dismiss the appeal.
 On the Motion to Dismiss.
By consent of counsel, the judgment was rendered and signed during vacation term of the trial court, on October 1, 1941. The judgment also contained an order granting the plaintiff an appeal, suspensive or devolutive, upon plaintiff furnishing bond in the sum of $100 in either event, returnable to this Court on or before November 17, 1941. As the suit had been brought in forma pauperis, the judge erred in requiring a bond in either event, and it was not necessary that plaintiff furnish an appeal bond. It then became the duty of the clerk of the court to prepare and file the transcript in this court. The transcript was filed in this Court on April 18, 1942. However, on July 14, 1942, plaintiff, by motion in open court, applied for and was granted a devolutive appeal to this court returnable on or before August 17, 1942.
The motion to dismiss is based: (1) On the transcript not being filed on or before *Page 41 
November 17, 1941, and that appellant's failure to do so constitutes an abandonment of the appeal; (2) that appellant abandoned her first appeal by moving for a second appeal on July 14, 1942. In the alternative, appellees contend that the order of July 14, 1942, was void and of no effect for the reason that the district court had been divested of jurisdiction by the first order granting the appeal in that no bond was required of plaintiff to perfect the same, and for the further reason that the record having been filed on April 18, 1942, the district court had been divested of jurisdiction thereafter. In the further alternative, appellees contend that the motion for appeal of July 14, 1942, was obtained at another term of court, and no citation of appeal was issued and served on appellees as required by law.
As to the first ground for dismissal, appellees now admit that it is not well taken in that we have decided that it is the duty of the clerk of the court and not of the appellant to file the transcript in our court. See Woodward v. Blair, La.App., 197 So. 920, Succession of Brickham, La.App., 197 So. 924.
Nor are the remaining contentions of the appellees well taken. The appellees readily admit that by the order granted by Judge Simon on October 1, 1941, this being a suit in forma pauperis, there remained nothing more to be done by the plaintiff-appellant, and that when the clerk of the district court, on April 18, 1942, filed the record in this court, the district court was divested of jurisdiction. Abandonment of an appeal must be the result of consent, of a conscious operation of the will, or it must be the result of some positive law. In this case, since the district court had lost its jurisdiction, plaintiff-appellant could do nothing wherein to give the court jurisdiction. Defendants-appellees rightfully contend that the order of July 14, 1942, was null, void and of no effect. There is no showing of any action or act by plaintiff-appellant constituting abandonment of her first appeal. The order for appeal taken on July 14, 1942, was unnecessary and it had no effect whatsoever and cannot be said to be an abandonment of the first appeal. See Bolton v. Eznack, La.App., 187 So. 840.
 On the Exceptions
In order to recover damages for injuries sustained through the alleged negligence of another, the negligence and connection between the negligence and injuries must be shown by reasonable certainty, or, in other words, there must be a causal connection between the negligence and injury, and also that connection must be by a natural and unbroken sequence without intervening efficient causes. Therefore, if, in the sequence of events between the original negligence and the final result of the accident, an entirely independent and unrelated cause intervenes and is, of itself, sufficient to stand as the cause of the accident, then the second cause is ordinarily regarded as the proximate cause and the other the remote cause. See Transportation Mutual Ins. Co. v. Southern Scrap Material Co.,181 La. 1028, 160 So. 800; Cavaretta v. Universal Film Exchange, La.App., 182 So. 135; Atchinson, T. S.F. Co. v. Calhoun,213 U.S. 1, 29 S.Ct. 321, 53 L.Ed. 671.
Since plaintiff seeks to hold defendant Lukes liable on the mere allegation of having violated Section 2 of Act 301 of 1908, as amended by Act 167 of 1932, § 3, it must appear that there was a causal connection between the negligence arising from the violation of the law and the injury and damage sustained, the said connection being by a natural and unbroken sequence without an intervening efficient cause; i.e., that such violation was a proximate cause of the injury and that compliance with the statute would have prevented the injury.
From the admitted facts as outlined supra, Picou was struck by an automobile driven by Gilbert Mayea. Picou was forced off the concrete slab and on the dirt shoulder by the Hormel truck. There is no allegation connecting or attempting to connect the Lukes with either Gilbert Mayea or the Hormel truck.
The plaintiff furthermore affirmatively alleges that the acts of the driver of the Hormel truck were "the direct, efficient and proximate cause of the said injury or injuries to petitioner's son, Paul O.J. Picou", and lists, as given supra, the charges of negligence as against the Hormel truck.
It is beyond our understanding, under these facts, that it can be said that the violation of Act No. 301 of 1908, as amended by Act No. 167 of 1932, was a proximate cause of the death of decedent. Had the Lukes obtained the certificate from the Superintendent of the Parish School Board of the Parish of St. Mary, the accident, under the facts as given, would have happened. *Page 42 
The most that can be said is that the violation of the statute was a remote cause and we see no causal connection between the violation of the statute and the accident. Furthermore, there was an entirely independent and unrelated cause which intervened between the negligence of the Lukes and the actual occurrence of the accident, which was, as averred by plaintiff, the proximate cause of the accident.
In this Court, plaintiff, in her case against Hormel Co. and its insurer, relies solely upon the violation of Rules 4 and 7 as provided for in Title II, Section 3, of Act No. 286 of 1938, the particular parts of which said rules are as follows:
"Rule 4. (Speed — General Rule).
"(a) Except as herein provided and subject to the provisions of Rules 3 and 17, and subject to the special speed limits specified in this Act, it shall be unlawful for any person to drive or operate any motor or other vehicle upon the public roads, highways and bridges of this State at other than a careful, prudent, reasonable and proper speed, having due regard to the traffic, surface and width of the highway, the location and neighborhood, and any other conditions or circumstances then existing, and no person shall, under any circumstances or conditions, drive any vehicle upon the public roads, highways or bridges of this State, at such a speed as will endanger the life, limb or property of any other person; and, subject to the special provisions and limitations contained in this Act, the person so driving or operating, or causing to be driven or operated, a motor vehicle on such public roads, highways and bridges, shall be held and deemed to be prima facie at fault in and responsible for any accident or damage proximately flowing therefrom or connected therewith, which presumption, however, may be rebutted and overcome by proper showing of the contrary. * * *
"(c) (Rate and Speed of Certain Vehicles.)
"1. It shall be unlawful for any person to operate or drive any motor or other vehicle upon the public roads, highways and bridges of this State, within or through any town or village not incorporated, at a greater rate of speed than twenty-five (25) miles per hour."
"Rule 7. (Overtaking Motor Vehicle.)
"(a) The driver of any vehicle overtaking another vehicle proceeding in the same direction shall pass at a safe distance to the left thereof and shall not again drive to the right side of the highway until safely clear of such overtaken vehicle."
It is therefore the contention of the plaintiff that since the Hormel truck was violating the statute by a speed of fifty miles per hour through an unincorporated village, that it was negligent per se and plaintiff contends also that it was the duty of the truck driver to pass to the left of Picou and not cause Picou to leave the concrete slab.
It is not disputed that Picou had the right to use the concrete slab as much as the Hormel truck. Evidently, the Hormel truck driver had given the proper warning to Picou of his advance from the rear, thus causing Picou to take to the shoulder. Picou chose to leave the concrete slab and place himself in a safe position. He remained on the shoulder while the Hormel truck safely passed him. No accident occurred by virtue of the fast driving of the truck driver nor the fact that the truck driver failed to pass Picou to Picou's left on the concrete slab. The accident happened when Picou left his place of safety and attempted to get back on the concrete slab without taking the proper precaution. All of the events occurred after the Hormel truck had safely passed Picou and had proceeded on its way. The accident happened either by the negligence of Picou in placing himself in a position of peril voluntarily and without exercising any of the precautions ordinarily exercised by anyone, or by the joint negligence of Picou and Mayea. We cannot see wherein the driver of the Hormel truck can be considered as responsible for the accident. If he was negligent by violating the provisions quoted supra, his negligence was remote and had no causal connection with the accident, and cannot be said to be a proximate cause of the accident.
As to the alternative demand of plaintiff for compensation as against the Lukes, plaintiff, in her brief, does not urge it and it must necessarily be taken as abandoned, and rightly so, because it is without merit. The petition shows that the Lukes were engaged in the retail grocery business, a non-hazardous occupation, and a delivery boy who does not use a truck or automotive equipment cannot be said to come under the Workmen's Compensation Act.
For these reasons the judgment sustaining the exceptions is affirmed. *Page 43