16 So.2d 466

**PICOU v. J. B. LUKE'S SONS et al.**

No. 37055.

Dec. 13, 1943.

Charles E. Fernandez, of Franklin, for applicant.

Jacob S. Landry, of New Iberia, and Brumby & Bauer, of Franklin, for respondents.

ODOM, Justice.

Paul Picou, a colored boy 14 years, 7 months, and 9 days old, died as a result of a traffic accident which took place on a paved highway on November 15, 1940. His mother, Maggie Picou, a widow, brought this suit for damages under Article 2315 of the Revised Civil Code. She alleged that her son was employed by one of the defendants, J. B. Luke's Sons, a commercial partnership engaged in a mercantile business, to deliver merchandise sold by the partnership, and that at the time of his death he was engaged in the business for which he was employed. She prayed in the alternative that, in case the court should hold that she was not entitled to recover damages under Article 2315 of the Code, J. B. Luke's Sons be ordered to pay her compensation, as provided in Act 20 of 1914, as amended, the Workmen's Compensation Act.

But plaintiff's claim for compensation under the Workmen's Compensation Act has been abandoned.

Each of the defendants filed exceptions of no cause and no right of action, which exceptions were sustained by the trial court. The plaintiff appealed to the Court of Appeal, First Circuit, which court affirmed the judgment. Thereupon plaintiff applied to this court for writs, which were granted.

Plaintiff's suit having been dismissed on exceptions of no cause and no right of action, we know nothing of the circumstances under which Paul Picou was killed except what we learned from plaintiff's petition.

Plaintiff alleged that on November 15, 1940, her son was ordered by his employer, Luke's Sons, to deliver packages of merchandise which had been sold to the employer's customers; that her son used a bicycle in making the deliveries; that his employer's customers lived near a paved and much travelled highway, and that, after delivering the packages, her son, while returning on his bicycle to his employer's place of business, rode on the extreme right-hand side of the paved portion of the highway, and that "he was, unlawfully and without any just cause or reason therefor, forced off the said Concrete Slab onto the dirt shoulder, which is contiguous to and which runs parallel with or alongside thereof, by an apparently heavily laden truck owned by Geo. A. Hormel & Co."

She further alleged that, "as soon as the aforesaid truck had passed Picou, he, Picou, rode the said bicycle back upon the Concrete Slab; that very shortly thereafter, Gilbert Mayea, who was driving an automobile at a moderate rate of speed in a Westerly direction about one hundred (100) feet in the rear of the aforesaid truck and in the same direction in which the truck and young Picou were traveling, sounded his horn in an effort to warn peti-

tioner's son that he was approaching from the rear and that he was going to attempt to pass him; immediately upon hearing the horn's blast, Picou turned his head to look around and he observed the said car apparently bearing down upon him from the rear; he, on the spur of the moment, having been placed in a position of danger, which was directly brought about by having been forced off the Concrete Slab by the apparently heavily laden truck [the Hormel truck], failed to choose the least dangerous course of action, i.e., he failed to return to the dirt shoulder on his right-hand or North side of the Concrete Slab, but steered the said bicycle directly to the South or his left-hand side of the Concrete Slab in an effort to avoid the oncoming automobile, not anticipating that the driver of the said oncoming automobile was also going to steer the said automobile towards the South or left-hand side of the Concrete Slab in an effort to drive around and to avoid striking him".

She further alleged:

"That because of the fact that both attempted to steer their vehicles to the South or left-hand side of the Concrete Slab in an attempt to avoid a collision, the front right fender of the automobile struck the front wheel of the bicycle at just about the time it reached the black line that centers the Concrete Slab, knocking the said Picou off of the said bicycle onto the Concrete Slab, with his head and a small portion of his body resting cross-ways upon the North dirt shoulder and the remainder—or the major portion—of his person resting upon the Concrete Slab, thus severely, seriously, painfully and fatally injuring the rider of the bicycle, the said Picou, in that he suffered lacerations of the scalp, face, knee and body; concussion of the brain with cerebral hemorrhages; fractured temporal bone, and fractured perietal bone."

In sum, what plaintiff alleges is that, while her son was riding his bicycle on the extreme right-hand side of the paved portion of the highway, he was overtaken by the Hormel truck and forced off the pavement onto the dirt shoulder of the road; that the Hormel truck passed on, and that, after it had passed, her son turned his bicycle to the left and rode back onto the pavement, and, while riding on the pavement, he heard the sound of an automobile horn, looked back, and saw an automobile approaching him from the rear; that the boy became confused, and instead of turning back to the right in order to get out of the way of the oncoming car, turned to the left across the pavement; that the driver of the car also turned to the left in an effort to avoid striking the boy; and that the automobile struck and fatally injured her son.

Plaintiff did not sue Gilbert Mayea, the driver of the automobile which struck and killed her son. She sued the partnership styled "J. B. Luke's Sons" and the members of the partnership; George A. Hormel & Company, the owner of the truck which she alleged forced her son off the highway, and the Hartford Accident & Indemnity Company, the Hormel Company's insurer. She prayed for judgment against these defendants individually and in solido in the sum

of $15,000. She alleged that the death of her son was caused by the fault and negligence of J. B. Luke's Sons and the driver of the Hormel truck.

The negligence charged against J. B. Luke's Sons and the individual members of the partnership was that her son, who was a minor 14 years, 7 months, and 9 days old, and therefore less than 16 years of age, was employed by these defendants "without having complied in any way with the terms and provisions of Sec. 2 of Act No. 301 of 1908, as amended by Sec. 3, of Act No. 167 of 1932, in that they failed to secure the age and employment certificate in the manner provided for by the aforesaid act, as amended", and that due to her son's "extreme youthfulness" his employers were guilty of gross negligence in sending him out onto the much travelled highway to deliver packages.

The negligence charged against George A. Hormel & Company was that her son was "forced off the highway" by the Hormel truck, and the truck was therefore "connected with" the accident which caused her son's death, and that the truck was being driven at the rate of 50 miles per hour, which was in excess of the speed limit prescribed by law.

As to the liability of the commercial partnership styled "J. B. Luke's Sons" and the individual members of that partnership, the employers of plaintiff's son, it is alleged that, due to the "extreme youthfulness" of the boy, it was the "grossest kind of negligence" for these defendants to send him out to deliver packages to their customers who lived in close proximity to the said thoroughfare.

But it was not negligence as a matter of law, or negligence per se, for these defendants to employ plaintiff's son and send him out to deliver packages, because the boy, according to the allegations of the petition, was 14 years, 7 months, and 9 days old, and therefore it was not unlawful for the defendants to employ him.

Section 1, Act 301 of 1908, as amended by Act 167 of 1932 (generally referred to as the "Child Labor Law"), makes it unlawful for any person, firm, co-partnership, or corporation to "employ any child under the age of 14 years to labor or work" in the mills, factories, establishments, etc., named therein, including specifically "stores or mercantile establishments", and provides that the violation of this provision of the act shall be punished by fine or imprisonment in the parish jail.

It was held by this court in the case of Alexander v. Standard Oil Co. (on rehearing), 140 La. 54, 72 So. 806, that the violation of this provision of the statute was negligence as a matter of law. In that case, the defendant employed a boy under 14 years of age, and, after he had worked several months as a water-boy, he was assigned to the work of heating rivets on a platform at the top of an iron tank in the course of construction. He fell from the platform and was injured. His mother sued defendant for damages on her own behalf and for damages on behalf of her minor son. The court held that the mother was not entitled to recover on her own behalf for the reason that she was as much

at fault for the child's being employed as was the defendant, if not more so. But it was held that the mother, as tutrix of the minor, was entitled to recover damages for the use and benefit of the child—not because the child's fall from the platform was attributable to any fault or negligence of the defendant, but because the employment of the child, who was under 14 years of age, was such negligence as to make the defendant liable.

In the case at bar, plaintiff's son was 14 years, 7 months, and 9 days old, and therefore these defendants did not violate the law by employing him and sending him out to deliver·packages.

■ Counsel for relator alleged and argued that these defendants were negligent in that they employed the minor without securing an age and employment certificate, as provided in Section 2 of the 1908 act, as amended by Act 167 of 1932. That section of the act, as amended, provides that the superintendent of public schools in the various parishes of the state (the Parish of Orleans excepted) "shall have full power to issue age and employment certificates to minors over fourteen years and under sixteen years of age, seeking employment in any of the occupations enumerated in Section 1 of this Act, in any part of this State." But neither in this section of the act nor elsewhere therein is there found any provision which makes it unlawful to employ a minor between the ages of 14 and 16 years without obtaining such certificate. This provision of the act is beneficial to minors over 14 and under 16 years of age who are "seeking employ-

ment in any of the occupations enumerated in Section 1 of this Act". A minor between the ages of 14 and 16 years may appear to be less than 14 years of age and for that reason might be unable to secure employment without such certificate. This section of the act does not provide that a minor between the ages of 14 and 16 years must have such a certificate in order to get employment. It merely provides that the superintendent of schools "shall have full power to issue age and employment certificates" to minors within that age-group.

■ But, even if it be conceded, as counsel argues, that the Lukes were at fault in not obtaining the age and employment certificate, that would not help plaintiff's case, because it is not alleged and is not argued that there was any causal connection between defendants' failure to obtain the certificate and the fatal accident. As said by the Court of Appeal [11 So.2d 38, 41], "Had the Lukes obtained the certificate from the Superintendent of the Parish School Board of the Parish of St. Mary, the accident, under the facts as given, would have happened."

If the plaintiff's son had been under the age of 14 years, then, under the ruling in the case of Alexander v. Standard Oil Co., supra, the employment of him by the Lukes would have been negligence as a matter of law or negligence per se. But such is not the case here.

The failure of the defendants to procure the issuance of the certificate could have had no influence or bearing whatever in

causing the fatal accident, nor would the issuance of it have prevented the accident.

■ In 45 C.J. § 479, p. 904, under the general heading "Negligence", subheading "Violation of Statutes or Ordinances", it is in order to impose liability for an injury said:

"In this connection it is considered that claimed to be the result of a violation it must appear that compliance with the statute or ordinance would have prevented the injury, or that it may be shown as matter of defense that compliance with the statute or ordinance would not have prevented the injury complained of in the particular case * * . *."

The general rule recognized in this state and elsewhere is that, in cases where a plaintiff seeks damages for injury inflicted upon him and relies as a basis for recovery upon the negligence of the defendant arising out of a violation of a law or a failure to observe its requirements, in order to recover it must be shown that there was a causal connection or relation between such negligence and the injury and damage sustained. See "Negligence", subheading "Proximate Cause", 45 C.J. 897, § 447 et seq; 38 Am.Jur. 827, verbo "Negligence", subtitle "Violation of Statute, Ordinance, or Administrative Order"; 22 R.C.L. 110, 113 et seq.; Ibid., § 91, p. 206; Martin v. Jonesboro Drug Co. et al., 7 La.App. 262; Rossville Commercial Alcohol Corp. v. Dennis Sheen Transfer Co., 18 La.App. 725, 138 So. 183; Transportation Mut. Ins. Co. v. Southern Scrap Material Co., Ltd., 181 La. 1028, 160 So. 800; Rohr v. New Orleans Gaslight Co., 136 La. 546, 67 So. 361.

■ In relator's application to this court for writs, it is stated that the exceptions filed by the defendants, J. B. Luke's Sons and the individuals who comprise the partnership, were sustained by the district judge without having been fixed for trial. The judgment of the district court sustaining the exceptions is in the record. It is styled "Maggie Picou versus J. B. Luke's Sons, et al." It recites: "This matter having come up for hearing on exceptions of No Right and No Cause of Action, filed by defendants, and after hearing the arguments, considering the law and the evidence to be in favor of said defendants * * *: It is ordered * * * that the exceptions of No Cause and No Right of Action filed by the defendants. George A. Hormel & Co., Hartford Accident & Indemnity Co., and J. B. Luke's Sons, Robert Luke, Emmett Luke, Everett Luke, and Herbert Luke, be and the same are hereby sustained and plaintiff's suit dismissed at her cost." Relator's counsel says that the judge erred in saying that the exceptions were sustained "after hearing the arguments" in so far as the exceptions filed by the Lukes are concerned. Counsel further says that the trial judge later found that he was in error and suggested to counsel that, if he would file an application for rehearing, he thought the application would be granted. But counsel says in his application to this court for writs that he "informed the Court that he would not do so, because the time in which a Motion for a New Trial could be legally filed had long since elapsed". According to counsel's statement, instead

of following the suggestion which he says the trial judge made that he file an application for a rehearing, counsel appealed to the Court of Appeal, First Circuit. In the Court of Appeal counsel filed two briefs on behalf of plaintiff-appellant, one in support of her contention that her petition set out a cause and right of action against George A. Hormel & Company and the Hartford Accident & Indemnity Company, and the other in support of her contention that her petition set out a cause and right of action against J. B. Luke's Sons. Each of these briefs is in the record, but in neither of them did plaintiff mention this particular point. The Court of Appeal did not mention this point in its opinion. Counsel for the plaintiff, Maggie Picou, filed an application for rehearing in the Court of Appeal, alleging that the opinion and decree rendered in the case were erroneous and contrary to the law and the evidence for the reason that the court was in error in holding that "as against J. B. Luke's Sons, and the individual members of the partnership, petitioner would have to show that the hiring of Paul O. J. Picou by the said Lukes was the proximate cause of the accident which ultimately caused the said Picou's death, regardless of the terms and conditions of Sec. 3 of Act 167 of 1932". Nothing is said in this application for rehearing about the alleged fact that the trial court passed on and sustained the exception of no cause or right of action filed by the Lukes without its having been set down for hearing. Clearly this point was never raised in the Court of Appeal, either on first hearing or in the application for rehearing. Counsel's failure to urge the point in the Court of Appeal, either on first hearing or on application for rehearing, was an abandonment of it.

As relates to the case against George A. Hormel & Company and the Hartford Accident & Indemnity Company, the holding of the Court of Appeal that plaintiff's petition set out no cause or right of action as to these defendants is clearly correct. According to the allegations of the petition, the Hormel truck overtook the boy, who was riding his bicycle on the extreme right-hand side of the paved portion of the highway. According to the allegations, the truck "forced" the boy to leave the pavement and to go upon the dirt shoulder of the road on the right-hand side. Just how the truck "forced" the boy off the road is not stated in detail, but presumably the driver of the truck sounded his horn to warn the boy of his approach. That was the driver's duty, under Rule 7 (b), Title II, Section 3 (p. 719), Act 286 of 1938, which provides that "The driver of an overtaking vehicle shall give audible and sufficient warning of his intention before overtaking, passing or attempting to pass a vehicle proceeding in the same direction."

But, regardless of just how the truck "forced" the boy to leave the pavement, the facts are, according to the petition, that he left the pavement and rode his bicycle onto the right-hand dirt shoulder of the road, which was a place of safety. His leaving the pavement did not injure him. The truck passed the boy when he was in a safe place. The truck proceeded on its way down the highway, leaving the boy in.

a safe place, uninjured. After the truck had passed and was out of his way, according to the allegations of the petition the boy left the shoulder of the road and rode his bicycle back onto the paved portion of the highway, without looking back to see whether another vehicle was approaching. Another vehicle was approaching from the rear, but the boy did not discover its approach until the driver of the oncoming car sounded his horn. It was then that the boy became confused, and instead of turning to the right in order to reach a place of safety, as he had done when the Hormel truck passed him, he turned to the left, immediately in front of the oncoming car operated by Gilbert Mayea, which car struck and fatally injured him.

Counsel alleged that the Hormel truck was being driven at approximately 50 miles per hour, which was in excess of the speed limit at that point, and in violation of the law. Even so, it does not appear from the allegations of the petition that the speed of the truck had any causal connection or relation whatsoever with the fatal accident. See authorities cited supra.

Counsel for relator cites Rule 4(a) of said act (p. 716), which provides that it shall be unlawful for any person to drive or operate any motor or other vehicle upon the public roads, highways, bridges, etc., of this state in a manner contrary to the general rules laid down in the act, and that the person so driving "shall be held and deemed to be prima facie at fault in and responsible for any accident or damage proximately flowing therefrom or connected therewith, which presumption, however,

may be rebutted and overcome by proper showing of [to] the contrary."

The allegations of plaintiff's petition show that the fatal injury which the boy received did not "proximately" flow from anything done by the driver of the Hormel truck. Counsel stresses the words "or connected therewith" and argues that the accident was "connected with" the truck driver's alleged violation of the law prescribing speed limits. But the allegations of plaintiff's petition do not disclose such connection.

For the reasons assigned, the judgment under review is affirmed.