This suit is brought on behalf of a minor, by his tutor, to recover workmen's compensation or, in the alternative, damages in tort for personal injuries arising out of an accident, which happened while the minor was engaged on a painting job at the Southdown sugar factory of the defendant, Southdown Sugars, Inc., on May 29, 1947. The minor, Merlin A. Cutrer, was born on March 7, 1930 and consequently on the day of the accident, was 17 years, 2 months and 22 days old. At the time that this painting job was going on, the name of the owner of the sugar factory was Realty Operators, Inc., which was subsequently changed to Southdown Sugars, Inc., which was made the proper party defendant in the suit.
In the petition it is alleged that the Traveler's Insurance Company carried workmen's compensation insurance and also liability insurance for negligence or tort for the Southdown Sugars, Inc., and it too, is made a party defendant. The demand for workmen's compensation is for the maximum amount allowed under the law at that time, that is $20.00 per week for 400 weeks, plus $500.00 medical expenses, and the demand in tort is for the sum of $18,363.00.
The demand for workmen's compensation is based on the ground that this minor was working under a contract of employment with the defendant, Southdown Sugars, Inc., through its alleged agent, James W. Duncan, with whom it had contracted to do this painting job. The job was being done by spray painting and the demand in tort is based on the proposition that the defendant Southdown Sugars, Inc., "suffered and permitted" a minor under the statutory age, to be employed in an occupation which is prohibited, that is spray painting, under the provisions of Act No. 301 of 1908 as amended by Act No. 210 of 1944 and known as the Child Labor Law of Louisiana. As a third proposition it is contended that in the event the minor's immediate employer, James W. Duncan, would be held to have been an independent contractor with the Southdown Sugars, Inc., then under Section 6 of the Workmen's Compensation Law, Act No. 20 of 1914 and its amendments, Southdown Sugars, Inc., is nevertheless liable for his compensation because the work he was engaged in, that is keeping the buildings of the company painted, was part of its trade, business or occupation, all as is provided under that section.
Those are the three points in the case which require our consideration. In a short statement filed in the record, the district judge seems to have disposed of all the *Page 316 
questions involved on the conclusion which he had reached that this minor was working for an independent contractor and had no employment relation in any way whatever with the Southdown Sugars, Inc., that company not even knowing that he was working on the painting job, and therefore, he held that it could not be liable under any possible demand arising out of the injuries he sustained in the accident. Counsel for plaintiff complains that the trial judge did not give any consideration to many of the various points raised by him. Our reaction to the whole case is that most probably the trial judge was correct in his disposition of the case as the evidence is overwhelmingly in favor of the defendant on the point that James W. Duncan, who was the immediate employer of the minor, was an independent contractor and that Southdown Sugars, Inc., at no time had anything to do with his employment and in fact knew nothing about it as he was injured only three hours after he had come to work on the day of the accident. On the demand in tort, counsel devoted a great deal of time and discussion to what is said to have been the negligence of Southdown Sugars, Inc., in having covered that part of the roof of its sugar factory through which the minor fell, with a composition roof as compared to a metal roof which covers all the rest of the buildings; that this composition roof was very brittle, thus creating a hazard to anyone stepping on it and therefore it was negligent in having failed to warn the minor of the danger he might incur by having to walk on it. That might be a very interesting point to consider and pass on if it could be shown that the Southdown Sugars, Inc., had any obligation towards the minor in that respect. Such an obligation, of course, would only arise in the event that some connection between that defendant and the minor could have been shown in relation to his employment. But, as we have said, no such relation ever existed and therefore we find no necessity for going into a discussion of that question at all.
The defense of course is that this minor was employed by an independent contractor and that the defendant Southdown Sugars, Inc., and its compensation insurance carrier, cannot be held liable for compensation, and on the point that the Southdown Sugars, Inc., permitted this minor to be engaged in a prohibited occupation under the Child Labor Law, it is urged first that it had nothing to do with his employment and secondly, assuming that it had, that he was not injured as a result of working in the prohibited occupation of spray painting in so far as the law prohibits that particular occupation.
As already indicated the trial judge rejected the demands made on behalf of the minor and dismissed the suit and this appeal was taken.
The evidence shows that Southdown Sugars, Inc., is engaged in the manufacture of sugar from sugar cane and also refining raw sugar at its factory known as Southdown near the City of Houma. Its factory is a tremendous building covering approximately three acres of ground. Photographs of the building introduced in the record accentuate that fact. The factory, as it stands, was built in 1939 and consists of a metal building covered with a corrugated iron roof with the exception of this small portion which is lower than the rest and which is covered with a corrugated asbestos or composition material.
The proof is that this building, in its entirety, had never been painted before and we think it may be fairly stated, from the testimony in the record, that sugar factories in the sugar area of Louisiana, which for the most part are built of metal, are seldom, if ever, painted. The reason why they were not painted before is because the cost involved in painting them by hand brush was prohibitive. Within a few years since spray painting has been introduced as a means of painting large industrial buildings, it has become possible to have these sugar factories painted at a greatly reduced cost. That is why the Southdown Company undertook to have its building painted in this manner.
Early in March, 1947, James W. Duncan, a resident of the Parish of East Baton Rouge, presented himself at the office of the Southdown Company at Houma and solicited *Page 317 
the job of spray painting its buildings. His proposition was to furnish all equipment and the necessary labor and do the job in a workmanlike and satisfactory manner for the price of $1.00 per square. Southdown Company had enough paint on hand which could be used in the event they would undertake to have the work done. The gentleman he spoke to, Mr. William McCollam, figured with him on the job but informed him that as it involved a larger expenditure than he was authorized to contract for, he would have to take the matter up with the president of the company at its office in New Orleans. This was done in a short time and resulted in Mr. Duncan being given the job of painting the factory. Accordingly, he moved in right away with his outfit which consisted of a compressor with motor to run it, all of his hose and spray-guns as well as necessary ladders and part of the rigging. The company permitted him to use some of its wire cable and blocks when they were not using that kind of equipment itself.
When the contract was being discussed between Duncan and McCullam, the latter asked Duncan if he carried workmen's compensation insurance on his laborers whereupon Duncan exhibited his certificate which showed that he was insured for workmen's compensation by the Keystone Mutual Casualty Company, Pittsburg, Pennsylvania.
Duncan then brought his men on the job under his foreman, J. W. Brown. Soon after the work had started, he realized that he could not do the job at the price he had agreed on because of the extra labor involved in painting around the openings of the building. He discussed this matter with McCullam and as it appeared that he had a just and reasonable demand, McCullam agreed to pay him at the rate of $1.50 per opening. Duncan says that it was $1.80, but that is not material to the issues in the case.
The evidence clearly shows that outside of the few things mentioned with respect to what the Southdown Company was to do, this job was to be done entirely by Duncan and he was to do it in his own way, in a manner that was satisfactory to the Southdown Company. The company maintained no supervision whatever over him, knew nothing about his laborers, who they were or how many he had, and in fact the only interest it had in the job was to see that it was done to its satisfaction. To that end, one of the assistant superintendents, Louis Nelson, went around from time to time to satisfy himself that the job was being well done. He also measured the number of squares painted in order to figure out the payments which were made weekly
It might be stated here that during the course of the job Duncan received notice that his compensation insurance company had been placed in receivership and therefore his policy was no longer in effect. He later showed his concern and worry over that by transferring the remainder of his contract to his foreman, J. W. Brown, who had similar equipment to his, and apparently Brown finished the job. Duncan testified that he informed McCullam of the fact that his insurance company had been placed in the hands of a receiver, but Mr. McCullam disputes this. We do not think that it is of any moment whether McCullam had that information or not. The impression we get is that when McCullam informed himself on the matter of workmen's compensation insurance he did that to emphasize the fact that this was Duncan's job and that Southdown Company would not be responsible for any workmen's compensation demands arising out of it.
It was while the work was going on that Duncan employed this young man Cutrer, who is his nephew. The boy had had a year's experience in spray painting and Duncan classes him as being very good at that kind of work. He went to work at noon on May 29, 1947, worked on top of a high roof and after finishing there intended to go to work on that portion of the building covered by this composition roof, and, so he says, after he had lowered himself on this latter roof, it give way under him and he fell through to the ground several feet below and hurt himself rather severely by having fractured the middle third of the humerus of his left arm. *Page 318 
Those, we believe, are all the facts that have to be stated in order to show the relationship between this young man and Southdown Sugars, Inc., with respect to whether he was in any way its employee. They are not disputed as far as we can see and certainly we can't understand under what theory it could be held that Duncan was the agent of the Southdown Company and through him this young man was its employee and entitled to recover compensation. The point is stressed by counsel for plaintiff that the matter may rest on the question of the right of the company to have terminated the contract at its own free will and he refers to some testimony which, he says, indicates that it could. This, however, we don't find to be so. The only possible way by which the company could have stopped Duncan from carrying out his contract would have been on the ground that he wasn't doing the job in a manner that was satisfactory to it, and that is a question which never arose between them.
If ever there was a case in which a person became an independent contractor within the definition and the meaning of that term as used in our workmen's compensation statute, we think that this is it. Section 3 of Act No. 20 of 1914, as amended by Act No. 85 of 1926, provides that: "the term 'independent contractor' shall be considered to mean, for the purpose of this act, any person who renders service, other than manual labor, for a specified recompense for a specified result either as a unit or a whole, under the control of his principal as to results of his work only, and not as to the means by which such result is accomplished." Duncan, the contractor in this case, was a person who rendered services, other than manual labor because he is shown to have two other jobs besides this one, all three of which he was superintending; his recompense was for a specified result as a unit, that being $1.00 per square and $1.80 per opening, and the only control which Southdown Company, his principal, had, was as to the result of his work only and it was not at all interested as to the means by which he obtained that result. In other words, all that Southdown was concerned with was that he did the job in a manner satisfactory to it and for which it was to pay him at the specified amount agreed upon. We think it is useless to discuss the point any further.
We will now take up the other point on which counsel for plaintiff would hold Southdown Company, Inc., liable under workmen's compensation and that is because this job of painting its sugar factory was part of its trade, business or occupation. Under Section 6 of the Workmen's Compensation Act, it is provided that where any person who is a principal, undertakes to execute any work "which is a part of his trade, business or occupation or which he had contracted to perform," he is liable to pay to any employee engaged in the execution of that work, any such compensation for which he would have been liable to him if that employee had been engaged directly by him. The important and controlling words of that section which make the employer liable under such circumstances are those which we have emphasized and which make it plain that the work involved must have been a part of the principal's trade, business or occupation.
It is urged that in this case, the work of keeping its factory in proper repair, getting it ready for the grinding operations of the winter-time, making it comfortable or convenient for its employees, involved keeping it properly painted and therefore when it engaged Duncan to do this job it was only carrying out what was a part of its trade, business or occupation. Whilst there is some testimony to show that in its operations of preparing and repairing the factory and having it ready for grinding operations, the company did some small amount of painting through its own employees, that painting was limited to inside work and was done by hand brush. In no sense of the words, as used however, can we take the testimony to mean that the job which this company contracted with Duncan to do was any part of its business, trade or occupation. As a matter of fact, it was most unusual as it was the first time the whole building had been painted and the job of painting it was undertaken only because this *Page 319 
new system of spray painting made it possible to have it done at a reasonable figure. Besides, the testimony shows that the local superintendent who had authority to have all the repair and up-keep work done in and around the factory, would not assume the responsibility of contracting for this job, because, as he says, it was something out of the ordinary and the amount was such that he thought it should be referred to the president of the company in New Orleans. All of this disposes of the contention that is made on this point.
The last contention is the one that Southdown Company, Inc., should be held liable in tort because it "suffered and permitted" this minor to be engaged in an occupation that is prohibited by the Child Labor Law of Louisiana. The pertinent provision of the Child Labor Act reads as follows: "No minor under 18 years of age * * * shall be employed, permitted, or suffered to work * * * (12) in spray painting or in occupations involving exposure to lead or its compounds or to dangerous or poisonous dyes or chemicals."
Assuming, for the sake of the argument, that this child was permitted or suffered by the Southdown Company, to be engaged in the work he was performing, there Would still be no liability on the part of the Southdown Company because the injury sustained by him was not the result of spray painting. He was hurt because he fell through the roof of part of the building and not because he was in any manner whatever exposed to whatever injurious compounds may have been contained in the paint that was being used in the spray-gun. In other words there was no causal connection at all between the spray painting he was doing and the injury he received. The act prohibiting a minor's employment in spray painting prohibits such work because of the danger involved in lead poisoning or in being exposed to dangerous or poisonous dyes or chemicals. It does not prohibit the employment because the child may become injured in some other manner. The violation of a provision of the Child Labor statute itself does not constitute negligence per se and in order for one to recover on behalf of a child who has become injured, it must be shown that there was some causal connection or relation between such negligence and the damage he sustained. See Picou v. J. B. Luke's Sons,204 La. 881, 16 So.2d 466 and also Cropper v. Mills, La. App.,27 So.2d 764. Aside from all of this, however, it seems to us as though it would be stretching the provisions of that law to hold in this case, and under the evidence as we appreciate it, that this child was "suffered or permitted" to be employed by the Southdown Company in the prohibited occupation of spray painting. As we have stressed the point before, no one connected with this company was even aware that he was working on this job.
We hold that the judgment appealed from is correct and it is therefore affirmed at the costs of the plaintiff, appellant.