COLE, Judge.
Two major issues are presented in this case. One, do the facts indicate a certain lighting fixture was defective, thus causing the homeowner to be strictly liable under 2317 for damages caused by the fixture? Two, is a contractor who renovates a room required to alter the ceiling height so as to meet the minimal requirements of the building code?
There was much conflicting testimony concerning the facts. Plaintiff, Richard Valenti, and A1 Arriaga were high school friends. On February 28, 1980, the boys (both approximately 19 years old), were “horseplaying” in Al’s bedroom.[1] The horseplay consisted of each boy trying to slap the other’s nose. At some point during their game Richard raised his right arm and came into contact with an overhead glass light fixture. The glass shattered and Richard lacerated several tendons in his wrist.
Richard filed suit against the owner of the home, Dr. Humberto Arriaga, his insurer, State Farm Fire and Casualty Company, and Fred Griggs, the general contractor responsible for renovations made to the Ar-riaga home.
After a trial on the merits the court rendered judgment in favor of defendants and against plaintiff. The court noted the facts were in hopeless conflict but made a credibility judgment concerning several things.
We first consider whether or not plaintiff proved the lighting fixture was defective. There was conflicting testimony as to the type of lighting fixture involved. Plaintiff testified the fixture was a chandelier type, suspended from the ceiling by a rope or chain. He described it as hanging so low as to be only four inches above his head.[2] This *1090 description of the fixture was corroborated by one of plaintiff’s witnesses, another high school friend.
Defendants and their witnesses testified the fixture was not suspended but attached directly to the ceiling. It consisted of four bulbs covered by a glass plate surrounded by a wooden frame; the total depth of the fixture being no more than six inches. A photograph of the fixture as it was several days before trial was introduced. Defense witnesses all testified this was the very fixture involved in the accident, the only difference being the fixture no longer had the glass plate and wooden frame attached to it. We quote the trial court:
“The Court must make a credibility determination as to the type of fixture involved. The preponderance of the evidence on this issue favors defendants and the Court so finds.”
It is well settled that the reviewing court should give great weight to the conclusions of the trier of facts and should not disturb reasonable evaluations of credibility and reasonable inferences of fact, even though other evaluations and inferences are as reasonable. Aleman v. Lionel F. Favret Co., Inc., 349 So.2d 262 (La.1977), rehearing denied 1977.
In order to find liability under article 2317 the injured party must establish the thing which caused the damage was in the care or custody of the defendant; the thing had a vice or defect, i.e., it caused an unreasonable risk of injury to another; and the injury was caused by the defect. Loescher v. Parr, 324 So.2d 441 (La.1975), rehearing denied 1976; Jones v. City of Baton Rouge, Etc., 388 So.2d 737 (La.1980). As to whether or not the thing (light fixture) was defective, the court commented as follows:
“The Court finds no liability under Article 2317, above, because the thing (fixture) did not pose an unreasonable risk to others in ordinary usage. The Court finds that the fixture did not hang a foot or more below the ceiling as contended by plaintiff, but rather was only approximately six inches below the ceiling. The edges of the glass were protected and enclosed by a wooden frame. Whatever risk may have been posed by such an appurtenance was not unreasonable in normal usage but only slight, if at all.”
We agree with this conclusion. The light fixture, protruding only six inches from the ceiling, was 82 inches from the floor (6 feet 10 inches). Under normal circumstances, this light fixture would pose no unreasonable risk to those in the room. The damage which occurred took place under unusual circumstances. The boys in the room were engaged in horseplay of a vigorous nature and as a part of the game each person tried to prevent the other from slapping his nose. Obviously, such an activity involves greater motion and less regard for the surroundings than would most usual activities. Therefore we are in complete agreement that the light fixture, in and of itself, posed no unreasonable risk and thus there is no liability for the homeowner under article 2317.
The second major issue is whether or not a contractor,[3] who renovates an existing structure, must take whatever steps necessary to meet minimum building code requirements. Mr. Griggs, the contractor in this case, testified he did not alter the ceiling of Al’s room (formerly the garage) but simply painted it and had an electrical subcontractor install the overhead light fixture. Defendants called as a witness, Leon Rodriguez, the assistant building official for the permits and inspections department of the City-Parish. He was accepted by the court as an expert in building inspections. He testified that because the renovation in question was done in 1979, the applicable building code was The National Building Code, 1967 edition. Although that code, under a section entitled “Light & Ventilation” calls for a “clear height of not less *1091 than 7 feet 6 inches,” Mr. Rodriguez testified the code did not apply to existing rooms. In other words, a contractor building a new structure would be bound by the minimum height, but a contractor simply refurbishing an existing room had no obligation to change the height of the ceiling.
Appellant, on the other hand, contends that the code does apply to existing structures and cites section 500.2 which reads as follows:
“a. No building, including existing buildings, shall be altered, added to or rearranged so as to reduce the size of a room or the amount of window space to less than that required by this article, or so as to create an additional room, unless such additional room is made to conform to the requirements for rooms in this article, except that such rooms may be of the same height as existing rooms in the same story.” (Emphasis added.)
Mr. Rodriguez did not specifically address this section at trial. However, for the reasons below, we find it unnecessary to determine whether or not the code applies to the renovations in this case. Assuming arguen-do the code does apply and Mr. Griggs breached the provision of the code requiring the 7 foot 6 inch clearing, we note this does not mean he is liable automatically.
In cases involving alleged liability as the result of the violation of a statute,[4] the essence of proximate cause is whether the risk and harm encountered are within the scope of protection of the statute. Dixie Drive It Yourself Sys. v. American Beverage Co., 242 La. 471, 137 So.2d 298 (La. 1962), rehearing denied 1962. In the present case, Mr. Rodriguez made it- clear that in his opinion the purpose of the 7 foot 6 inch clearing requirement was to insure proper ventilation and light. Therefore, if the damage had been caused by something related to lack of ventilation or light, we would have no difficulty saying the violation of the ordinance was the proximate cause of the injury. However, to the contrary, the damage which occurred was caused allegedly by the lack of proper distance between the ceiling and the floor and the concurrent lack of distance between the bottom of the lighting fixture and the floor. The trial court commented on this issue as follows: “It is clear that the code does not purport to regulate ceiling heights from the standpoint of danger to persons from overhead electrical fixtures.” The risk and harm encountered were simply not within the scope of protection of the statute; therefore Mr. Griggs is not liable for the damage.
An older Louisiana case held that to impose liability for an injury claimed to be the result of a violation of a statute it must appear that compliance therewith would have prevented the injury. Picou v. J.B. Luke’s Sons, 204 La. 881, 16 So.2d 466 (La. 1943). In this case we cannot conclude that had the ceiling (and the light fixture) been a mere two inches higher the injury would not have occurred. This is so because the point of contact between the plaintiffs body and the light fixture was the plaintiffs wrist. Obviously, the wrist is not the most extreme point of a person’s arm, but is followed by a hand which measures at the very least 6 inches. It is not, therefore, reasonable to conclude that if the ceiling had been two inches higher plaintiff would not have made contact with the light fixture. Indeed, it is very likely that he would still have contacted it, the only difference being the point of contact would have been some two inches higher, somewhere on his hand.
In addition to the two major issues discussed herein, appellant raises two minor issues. First, he contends the court erred in concluding plaintiffs conduct would bar his recovery even if either defendant were found to be liable.
Although the trial court found plaintiff to have been at fault, this determination was somewhat superfluous in that the *1092 court also found defendants to be not liable. Obviously, since we agree defendants are not liable, it is technically irrelevant whether or not plaintiff was at fault. But in order to avoid any confusion that might arise from failure to treat this aspect of the case, we state for the record we agree with the trial court the actions of plaintiff would bar his recovery even if it were found that either defendant was responsible for the damage.[5]
The trial court found as a fact that the accident occurred while the boys were engaged in mutual horseplay. Plaintiff’s testimony indicated he was very familiar with Al’s room and had even touched the light fixture on a previous occasion. As the court noted, even if the light fixture was suspended from the ceiling as plaintiff contended, plaintiff should have been aware of the obvious risk it would pose to anyone engaging in horseplay or reckless activity in the room. We quote from the trial court:
“This being so, plaintiff’s admitted familiarity with the room and its furnishings, especially the light fixture which [he testified] he could touch by merely raising his hands above his head, should have alerted him to whatever risk or danger the fixture posed. Plaintiff should, under circumstances narrated by him, have realized that sudden upward flinging of his arms would bring them into contact with the fixture.”
Finally, appellant’s fourth argument is that the trial court erred in denying a new trial. The new trial was requested so that plaintiff could introduce an expert to rebut testimony introduced at trial concerning the applicability of the building code to the renovations on the Arriaga home.
The transcript of the trial indicates the court held open the case for seven days to allow counsel for plaintiff to notice a deposition of an expert. Apparently no deposition was noticed within this time period, therefore the court proceeded to decide the case. We can find no reason to grant a new trial under these circumstances. Appellant was granted ample opportunity to produce the evidence he sought and failed to act timely.
For these reasons, the judgment of the trial court is affirmed. Appellant is to pay all costs.
AFFIRMED.

. The bedroom, which had recently been converted from a garage, had a ceiling which was 88 inches (7 feet 4 inches) high. This was 4 inches lower than the ceiling in the adjacent hall and 11 inches lower than the ceiling in the adjacent playroom.

. Plaintiff was 5 feet 5 inches tall.

. Appellants contend the homeowner is also liable for violations of the building code. For the same reasons we find no liability on the contractor’s part, we find none for the homeowner.

. Mr. Rodriguez testified the National Building Code had been adopted by ordinance of the City-Parish.

. Plaintiffs actions could be classified as “victim fault” under article 2317 or contributory negligence under article 2315.