McBRIDE, Judge.
John H. Ernst, by this suit, seeks to recover from The New Orleans Public Belt Railroad and the City of New Orleans damages for personal injuries, medical expenses, and loss of wages, resulting from an accident.
In his reasons for judgment, the learned trial judge comprehensively reviewed the facts and studiously stated the principles of law, which in his opinion were applicable to the case. We herewith quote the written reasons in part:
“Plaintiff seeks damages for personal injuries, medical expenses and loss of wages, resulting from his fall from an automobile truck on which he was a passenger, returning from his work on the riverfront to his shop.
“The accident happened about 5 pm in March, 1950. Plaintiff was employed as a mechanic’s helper by Todd-Johnson Dry-docks, Inc. and was injured while the truck was crossing the railroad tracks of defendant on Washington Avenue, just after leaving the docks (which are enclosed sheds) at the foot of Washington Avenue.
“Plaintiff and three other employees of the Drydocks Company were returning from work on the riverfront.
“Defendant owns and operates several parallelling railroad tracks along the city side of the docks, which are used for switching operations. At the time of the accident, defendant was engaged in switching a group or ‘cut’ of four empty railroad freight cars at the Washington Ave. entrance to the docks.
“As testified to by plaintiff and Achee, driver of the truck, and corroborated by Berthelson, the foreman, and Sykes, engineer of the locomotive of defendant’s switching crew, the facts are as follows:
“Defendant had a ‘cut’ of four empty freight cars at rest on the track nearest the *659 docks, about even with the downtown side of Washington Ave. The truck was leaving the Washington Ave. entrance to the docks or wharf and came to a stop before emerging. Berthelson, defendant’s crew foreman, saw the truck stopped and sig-nalled the driver to proceed across the tracks. Just as the truck approached, or was on, the track, the engine on the far end backed up to couple the ‘cut’ of cars, and in so doing forced the last car onto the Washington Avenue roadway a distance of 30 inches. Believing the cars were about to crash into his truck, and to avoid what he thought was an impending collision, the driver (Achee) accellerated his motor and sped forward across the track, causing plaintiff to be violently thrown from the truck onto the roadway.
“The freight cars did not cross Washington Ave., in fact, did not proceed into the roadway more than 30 inches, but as soon as the engine had completed the coupling, the cars were moved downtown or away from Washington Ave.
“While it may be true that the freight cars did not actually cross Washington Ave., and were never intended to do so, the truck driver (Achee) was justified in doing everything possible to escape what he considered an impending collision when he saw the freight cars apparently backing into his truck. He could not have known that the freight cars would back only 30 inches into the roadway. Once he saw the freight cars apparently bearing down upon him, he would have been guilty of contributory negligence had he not sought to escape and a collision had actually occurred. The doctrine of discovered peril and last clear chance could have been invoked against him, even though his negligence was not imputable to plaintiff.
“Accordingly, I must exonerate the truck driver and hold that defendant’s agents were alone guilty of primary negligence in placing the truck in a position of peril that required its driver to seek escape by increasing his speed and suddenly lurching forward, causing plaintiff to fall from the truck onto the roadway. Defendant’s negligence consisted of the acts of the crew foreman (Berthelson) in signalling and inviting the truck to cross the tracks, and the backing of the cars into the roadway in the direction of the truck while it was in the act of crossing the tracks.
“This brings us to defendant’s alternative plea of contributory negligence, charging that plaintiff carelessly, negligently and unnecessarily allowed himself to be jolted in, about or out of the truck, and in placing himself in a precarious position, where a slight or ordinary jolt might result in his injury. Defendant contends that the truck could have been jolted for many reasons while the truck was moving on its regular course over the streets, so that the moving of its cars did not create an extraordinary situation or emergency that could not have been contemplated by plaintiff when he elected to ride on the truck in the manner he did.
“The truck in question is a large flat truck with a driver’s cabin, guarded on either side by gates or fences 3yz feet 'high, extending to within 4J4 feet of the rear end of the truck, which was open and unguarded. The floor of the truck was 71/2 feet wide and 10i/£ feet long. The gates on either side extended back 6 feet, or 4i/¿ feet from the rear end. The side gates or fences were 3 feet or more high and were cross pieces four inches wide and two inches apart nailed to uprights I1/2 feet apart and fitted into holes in the floor of the truck. The floor of the truck was 31/2 feet from the ground. The rear portion of the floor of the truck, measuring about feet by 7i/z feet, was without any protection. A person or property could roll off this unguarded portion of the truck by any severe or sudden jolting of the truck.
“Plaintiff was seated on a tool box or coil of rope on the extreme end of the left gate or fence facing the front. His body was on a level with the end of the left gate and his feet extended forward and behind it. Plaintiff and three fellow workmen were on the truck. The three other workmen, when warned of the danger, scampered to get over to top of the cab of the truck to avoid the threatened collision, but the truck cleared the track before they got over.
“I cannot see why or how it was inherently dangerous for plaintiff to ride on the *660 truck in the manner he did and that he assumed a known hazard or risk in so doing, tie had ridden on many occasions before without mishap. While it was possible for him to be thrown off at some other point by a sudden stopping or jolting of the truck, that possibility is speculative and, if it did occur, the one causing it would be answerable to him, just as defendant is here.”
Plaintiff recovered judgment for $5,348.-00 against the City of New Orleans, acting through The Public Belt Railroad Commission for the City of New Orleans, and The Public Belt Railroad Commission has taken this appeal from the judgment.
There is but little dispute regarding the facts'. Appellant disagrees with the findings of the trial court only in a few particulars.
The first complaint is that the finding that plaintiff was violently thrown from the truck onto the roadway was erroneous. Whether plaintiff’s fall was violent is immaterial, as counsel for appellant, in brief, mention specifically that they do not disagree with the description of the plaintiff’s injuries set forth in the reasons for judgment. Even were we to assume that the fall was otherwise than violent, nonetheless plaintiff would be entitled to a recovery, as the facts of the case clearly establish negligent acts of the railroad’s employees from which flowed a chain of causation resulting in injury to plaintiff.
It is also argued that no sudden emergency or peril requiring instinctive action confronted the driver. Appellant’s position is that because the driver knew, or should have known, that coupling operations at the point of the accident take place at all times, the action of the foreman in beckoning the truck to cross the track should have been complete and adequate assurance to the driver that he would safely cross the track. Notwithstanding the signal of the foreman, we think that if any reasonably prudent person were to be placed in the same position as was the driver of the truck, whatever assurance he may have entertained because of the signal would have been instantly dissipated when the box car started rolling toward him. There is always within man the deep-seated instinct of self-preservation, and we can hardly imagine a more dreadful experience than having a train move toward one on the track who is in close proximity to it. In accelerating the vehicle to get off the track, the driver reacted only as any normal human being would have in similar circumstances.
True it is that the vehicle was in no actual danger, but defendant’s negligence is not to be tested by any such standard. The servants of the railroad created an apparently dangerous situation, and plaintiff was injured as the result. There seems to be conflict and confusion in the testimony as to which member of the train crew gave the coupling signal. One of the trainmen admitted that he would never give a signal to couple cars at an intersection whilst a vehicle was passing over the track, and this would indicate that the crewmen were aware that such an operation might possibly be dangerous and cause injury to persons or property. We think the foreman should have foreseen that such a coupling, made in close proximity to a vehicle, might instill fear in a driver, notwithstanding the signal given to proceed with the crossing.
We have been able to find the unreported case of Andrus v. New Orleans, Texas & Mexico Railway Co., decided by the Court of Appeal, First Circuit, in 1921, No. 600, writs refused by the Supreme Court, No. 25,233. In' that case plaintiff’s husband, who was dHving an automobile, approached a railroad crossing on which there were several stationai-y box cars obstructing a view of a second track. The automobile crossed the first track on which the cars were standing, and as it moved onto the second track, a loose box car which had been “kicked” from a train bore down on the automobile. The plaintiff, riding beside the driver, fearing for her safety, jumped from the vehicle just as the automobile passed over the track ahead of the moving freight car. The automobile was not struck, and had plaintiff remained therein she would have escaped injury, as was the case with its other occupants. She suffered injuries from the impact with the ground. The court held the railroad guilty of negligence, and allowed a recovery. The court said: “ * * * she was *661 under the honest belief that she, was in imminent danger, which was produced by the negligence of defendant company. She acted with ordinary care as would have acted any normal person situated under similar circumstances, and her case falls within the emergency rule as has been recognized by many authorities. See Ruling Case Law, 20. P. 134, Et Seq. Borrows on Negligence P. 40.”
The court’s holding is applicable in the instant case.
Appellant also complains of error in the finding that Ernst was seated on a tool box or coil of rope. We quite agree with counsel that the evidence shows that Ernst sat on a coil of rope under which was a tool box. This being so, counsel argue, Ernst placed himself in an extremely insecure and precarious position, which contributed to his falling. The size of neither the box nor the coil of rope is shown, and we cannot say that plaintiff’s perch atop both amounted to negligence. Contributory negligence is an affirmative defense and always must be proved by the pleader. Nothing contained in the record would lead the impartial mind to a conclusion that Ernst was imprudent so far as respects his seat on the box and rope, or as to his position in the rear of the truck.
This brings us to the quantum. Plaintiff’s injuries were well set forth by the trial judge: “Plaintiff suffered a fracture of the left leg extending into the knee joint and damage to the articular surface, accompanied by severe pain and. suffering. He lacks only 5 degrees of normal 180 degree extension of his leg and is only able to bend his leg back half the normal distance. He uses a cane to walk. His residual disability is only 15% and in time should effect a complete recovery. Plaintiff required no surgery or open reduction, only external traction.”
The judgment is for $5,348.00, constituted of the following items: for the injury, pain, and suffering, $3,000.00; for loss of work from March 22 to December 1, 1950 (thirty-six weeks at $44.40 per week), $1,-598.00; for medical and hospital expenses, $750.00.
Plaintiff, in answering the appeal, prays that the amount of the award be increased to $17,226.33.
Ernst, who has a fifth grade education, at the time of the accident was employed as a machinist’s helper by Todd-Johnson Dry-docks, Inc., and his weekly ’ earnings amounted to $44.40. After his convalescence from the results of , the injuries, his employer assigned him to lighter work in the capacity of shopkeeper, at about the same weekly, rate of pay. The evidence shows that for thirty-six weeks plaintiff was unable to work, and his loss óf earnings for said period amounted to $1,598.00, and the allowance of this item representing loss of wages is justified by the evidence.
The only proof of the cost of medication necessitated by the injuries comes from an adjuster for the workman’s compensation insurance carrier of Todd-Johnson Drydocks, Inc., who testified that $471.-93 was expended. There is nothing showing, or even suggesting, that plaintiff will be put to the cost of future medical treat.ment, and we do not know on what basis the trial judge allowed $750.00 for medical and hospital expenses. This item must be reduced to the amount proved, $471.93.
 It appears that plaintiff’s injuries were of a serious nature, and will be to some extent permanent, at least for an indefinite period. While plaintiff, at the time of the trial, was back at work for his old employer, his duties were considerably less arduous than those which he had been called upon to perform in his original capacity of machinist’s helper. Unquestionably, should plaintiff’s residual disability remain, it will hinder him, in the future, from performing the heavy work to which he was accustomed. As we said, plaintiff is a man having but little education, and under the circumstances we think that, should the time come when he will have to compete with able-bodied workmen, his disability may considerably interfere with his obtaining the kind of employment the record shows he was fitted for and accustomed to performing. The assessing of damages for personal injuries is a matter which the law places within the sound discretion of the *662 court, and after taking into consideration plaintiff’s station in life, the limited field in which he can work because of his meager educational qualifications, and the probability that the results of the injuries might interfere with his future endeavors, the award for injuries, pain, and suffering should be increased to the sum of $4,000.00.
During twenty-six weeks of the period plaintiff was unable to work, his employer’s insurance carrier paid compensation to him at the rate of sixty-five per cent of the wages. The medical expenses to the extent of $471.93 were also paid by the insurance carrier. We have no concern in this suit with whether plaintiff received workman’s compensation, or that the medical expenses were paid as above stated. This action sounds in tort, being controlled by Article 2315 of the Civil Code, and plaintiff is entitled to recover his damages. It matters not that he received workmen’s compensation and had'the medical expenses taken care of by the employer. Under LSA-RS 23:1101, Act'No. 20 of 1914, § 7 (1, 2), an injured employee may claim and receive workmen’s compensation from his employer, which shall not affect his claim or right of action against a third party tort feasor, nor be regarded as establishing a measure of damages for the injury; such injured employee may obtain damages from or proceed at law against such third party.
Neither Todd-Johnson Drydocks, Inc., nor its insurance carrier, whichever paid workman’s compensation and medical expenses to Ernst during the period of his disability, is a party to this suit, no intervention having been filed in accordance with the pertinent provisions of the workmen’s compensation statute. But, notwithstanding that no such intervention was filed herein, plaintiff’s counsel insists that the judgment should be increased so as to embrace a $3,100.00 compromise settlement (over and above the twenty-six weeks compensation actually paid) made by the insurance carrier with Ernst.
As we pointed out before, all that this action can involve is the question of defendant’s liability to Ernst in tort. This is purely, simply, and only an action ex delicto under the provisions of Article 2315 of the Civil Code. We have not the authority to take into consideration the compromise settlement of the workmen’s compensation. Our only duty is to assess against the defendant the full actual damages sustained .by Ernst alone, and the agreement made with the employer as to workman’s compensation liability is to play no part in the case.
The only thing the tort feasor can possibly be liable for is damages, and the liability is not to be broadened merely because the employer was liable to the employee for compensation. See Todd-Johnson Drydocks, Inc., v. City of New Orleans, etc., 55 So.2d 650, this day decided by us.
For the reasons assigned, the judgment, appealed from is increased to the sum of' $6,069.93, and as so amended, and in all other respects, it is affirmed.
Amended and affirmed.