McBRÍDE, Judge.
The intersectional collision out of which plaintiff’s case arises occurred at about 8 o’clock on the foggy morning of. January 20, 1951 at Jefferson Avenue, a wide boulevard having two paved driveways separated by a neutral ground about 15 feet wide, and Coliseum Street, which is but a single driveway accommodating a two-way traffic movement. A Dodge automobile owned, by Langenstein 8c Sons, grocers, and driven by one of their employees, Harold Theard, was on its way down Coliseum Street, and when it reached the intersection formed by the lower driveway on Jefferson Avenue, it was struck on its right side toward the rear of the vehicle by the front part of defendants’ taxicab, which was going back Jefferson Avenue in the direction away from the-Mississippi River.
The plaintiff is John Lloyd Jlecht, also an employee of Langenstein & Sons, who was riding on the back seat of .the Dodge automobile driven by Harold Theard. He was injured in the accident and sued Toye Bros. Yellow Cab .Company and the partners thereof for $2,904.50, representing physical injuries, loss of wages, and medical expenses. The petition alleges that the accident was caused solely and exclusively by the fault of defendants’ employee,.who was driving the cab. The specific charges of negligence are that the cab operator drove at an excessive rate of speed, did not keep the icab under control, drove without headlights, did not keep a proper lookout, and failed to timely stop the 'cab so as not to run into the Dodge automobile. The answer first denies negligence ,on the part of defendants’ cab driver, and then goes on to allege that the accident.was 'caused solely as a result of the gross fault of Theard, who was driving the Langenstein vehicle. Then follow seven detailed acts of negligence attributed-to Theard. •
It is well to bear in mind that nowhere in the answer, alternatively or otherwise, is Theard or Hecht charged with contributory negligence. . . ■ ■ .
Such being the case, plaintiff’s success depends upon'his showing that the proximate cause. of the accident was the sole negligence, or the concurrent negligence, of the chauffeur of the taxicab. The evidence is conclusive that defendants’ employee was guilty of negligence. The fog prevailing at. the time of the accident reduced visibility to .about 40 or 50 feet. The occupants of the Langenstein car, four in number, all testified that the Dodge entered Jefferson Avenue at a slow rate of speed and then was driven across the upper traffic lane on Jefferson Avenue, and then the neutral ground, and then emerged into the lower driveway where it was, without .warning, suddenly hit by the taxicab. Plaintiff’s witnesses testified that the cab was traveling at between 35 and 40 miles per hour, and that the cab was moving at a fast pace is shown by certain physical evidence testified to by a disinterested witness. Immediately after the accident this witness observed in the paved driveway skid marks made by the cab, and his uncontradicted testimony is that -the • skid marks commenced about 21 or 22 feet before-the point ;at which the impact occurred, - and 'were discernible for at least 15’ beyond that point. . The Dodge was knocked sideways through a fence and came to .-rest against a palm tree in the yard of a resident.,at the corner. The statements of defendants’ employee as to his speed are unsatisfactory, to say the least. At various stages of his testimony he gave varied estimates. At one time he claimed that the cab was moving at 5 miles per hour. Another time he said it was going “somewhere., around fifteen * * * maybe going twenty * * * I don’t think I was going thirty.” The answers to questions as to when he first sighted the Dodge automobile are likewise confused and contradictory. The cab driver first testified positively that he saw. the car about 10 or 15 feet away, but later changed his *522 testimony to say that he saw the Dodge a half a block away, a quarter of a block, 25 feet, and then 40 feet. We are thoroughly convinced that the accident never could have happened except for the imprudence of the driver in operating his cab at a dangerous rate of speed under the atmospheric conditions prevailing, and his unmindful - ness of traffic crossing Jefferson Avenue. The jurisprudence of this court and of the other courts of appeal in' this state is to the effect that a motorist traveling through a fog is held to the most extraordinary and unusual care. He is bound to have his vehicle under such control that it can be brought tó a stop within the range of visibility.
As has already been said, the answer merely makes denial of negligence on the part of the cab driver, and then specifically alleges that the accident was the result of the fault of Theard in several enumerated respects. ' The defense of contributory neg-lignce is not specially set up, and that point was not put at issue by the answer.
It is now well established that contributory negligence is a special defense which must be pleaded in order for it to be considered, and that the defendants carry the burden of proving the allegations relied upon by them. Althans v. Toye Bros. Yellow Cab. Co., La.App., 191 So. 717.
Sensing the weakness 'Of his position; counsel asserts that certain evidence which he points to as showing contributory-negligence not only on the part of Theard, but also on the part of the plaintiff himself, was admitted at the trial.without objection, and therefore the pleadings have been enlarged so as to bring to issue that defense.
In our jurisprudence it is also well settled that evidence touching issues not raised by the pleadings and received without objection effectively enlarges the pleadings to the extent that it is to be considered as an issue in the case. We have carefully sifted the evidence which counsel contends brings to the fore the issue of contributory negligence, and we think that it was responsive to the pleadings, clearly admissible, and could not have been successfully objected to by plaintiff. The major issue in this suit is which one of the drivers was negligent. The petition charges that defendants’ employee was the one at fault; the answer denies this, and alleges that the negligence rested with the Lan'genstein driver.
An example of the testimony which it is said expanded the answer to the extent that contributory negligence became an issue appears on Hecht’s cross-examination. He was asked if he did not tell Theard when' the Dodge was on the neutral ground that he could go across the lower lane of Jefferson Avenue. Hecht’s reply was “I told him he could go across because I didn’t see anything.” This and other testimony relied upon -by counsel to make out the special defense which he had failed to plead was brought out for no other purpose than to show that the taxicab operator was free from negligence, so as to refute the allegations of the petition and to prove those of the answer. The answers of Hecht, upon which counsel’s argument rests, go a long way toward proving the negligence of the cab’ driver. Evidence admissible under the pleadings cannot have the effect of enlarging them. Again see Althans v. Toye Bros. Yellow Cab Co., supra.
Theard admitted that he drove into the intersection without first having stopped on the neutral ground, and this counsel maintains 'amounted to a violation of the City traffic ordinance and a confession of contributory negligence. Here again we have the same situation. Theard’s, answer to the question whether he stopped is well within the issues presented by the pleadings. Likewise is the statement of Hecht that two other persons were riding in the front seat with Theard.
Being, therefore, of the firm opinion that the defense of contributory negligence never became an issue in the case, the only thing remaining for decision is the nature and extent of plaintiff’s injuries and loss.
After the accident Hecht was conveyed to the Baptist Hospital for first aid treatment and sutures were taken in his right forearm. He then went to his home, *523 and upon his arm swelling, he went to another hospital where X-ray pictures were made.
Later Hecht went to see Dr. William P. Bradburn, the first visit being on January 29, 1951. This physician found a lacerated wound about an inch and one-half long near the elbow on the ulnar side of the right arm; most of the sutures had already been removed, and Dr. Bradburn took out those that remained and permitted Hecht to go home. A day or so afterward Hecht endeavored to return to his job, but his arm swelled and became painful in the region of the muscles on the outer side of the arm. He again' went to Dr. Bradburn, who prescribed rest and gave the patient some diathermy treatments. Later on Hecht again returned to work with the same bad results. He, was then seen by Dr. Bradburn off and on until March 21 when he was discharged and able to return' to his work.
Hecht’s medical 'expenses aggregate $74.-50. He could not work for eight weeks, and his testimony is that his weekly base pay was $37.50,, and that overtime • usually brought the amount up to $45. There is no satisfactory proof as to the weekly overtime and our allowance for loss of wages, measured by the amount of base pay, is $300. We make this allowance of the loss of earnings despite the fact that Hecht received workmen’s compensation payments from his employers during his disability. As the employers did ‘not intervene, and are not therefore before Us,- we are not concerned with the .compensation payments; this action sounds in' tort, being controlled by LSA-C.C. art. 2315, and plaintiff is entitled to recover in full for his damages. See Ernst v. New Orleans Public Belt R. R., La. App., 55 So.2d 657.
Plaintiff is a young man. His wounds have now healed and according to Dr. Brad-bum the injuries were-not of a permanent nature. The doctor stated that the wounds were to a muscle group, -and there is no doubt that Hecht suffered considerable discomfort. The law has placed the assessing of damages for personal injuries within the sound discretion of the court, and we think that $500 would be a fair allowance for the pain, suffering, and mental anguish endured by plaintiff as a result of the accident.
Therefore, the judgment of the lower court is reversed, and it is now ordered, adjudged and decreed that plaintiff have judgment against the defendants, in solido, for the full sum of $874.50, with legal interest from judicial demand until paid; defendants-appellees .are to pay the costs of both courts.
Reversed.