102 So.2d 263 (1958)
Thomas G. KERN, Plaintiff-Appellant,
v.
Claude W. BUMPAS, Defendant-Appellee.
No. 8783.
Court of Appeal of Louisiana, Second Circuit.
March 25, 1958.
Rehearing Denied April 22, 1958.
Writ of Certiorari Denied May 26, 1958.
Gerard F. Thomas, Jr., Natchitoches, for appellant.
Bethard & Bethard, Coushatta, for appellee.
*264 GLADNEY, Judge.
Plaintiff, Thomas G. Kern, has brought this action to recover for damages sustained by his automobile allegedly due to the negligence of an employee of the defendant, Claude W. Bumpas, in failing to properly secure a drain plug after changing the oil in plaintiff's automobile. The case was tried on its merits and was decisioned in favor of the defendant. Plaintiff alone has appealed from the judgment. A proper resolution of the case principally depends upon the correctness of our determination of the important facts affecting the question of liability.
The defendant denied the charge of negligence and specially pleaded as an alternative defense that plaintiff was guilty of contributory negligence in that: he failed to timely observe the indicators on the instrument panel of plaintiff's car, designed to show oil pressure and motor heat; that prior to leaving Clarence, plaintiff observed the car was heating and stopped, but he made no effort to ascertain the trouble and thereafter continued to drive his automobile; and he drove the car into a filling station at Clarence and after being told that the car had no oil in the crankcase, he continued to drive without replenishing his oil until through lack of oil, and heat, the motor ceased to operate. Additionally, in the alternative, the defendant pleads that plaintiff was guilty of contributory negligence in not acting as a prudent man to mitigate and minimize the damages to the described automobile.
The legal responsibility of the defendant as a depositary engaged for a consideration to service plaintiff's vehicle is governed by the applicable provisions of Articles 1908, 2937 and 2938 of LSA-C.C. The measure of care toward the deposit required by the codal articles is that "expected from a prudent administrator" as expressed in Article 1908, and presupposes "the same diligence in preserving the deposit that he uses in preserving his own property", as stated by Article 2937. Article 2938 says the provision of Article 2937 is to be rigorously enforced, inter alia, "where the deposit has been made by the request of the depositary." This court recently in the case of Hazel v. Williams, 1955, 80 So.2d 133, 135, had occasion to give consideration to the question of liability of a depositary to an owner for damages to his automobile sustained while in the custody of a service station owner and therein we approved the rule as stated in 8 C.J.S. Bailments § 50, pages 343, 344, 345, 346, that "where the depositor or bailor has proved injury he thereby establishes a sufficient prima facie case against the depositary or bailee to put him on his defense."
The rule is so stated in C.J.S. thusly:
"* * * and hence, where chattels are delivered to a bailee in good condition and are returned in a damaged state, or are lost or not returned at all, the law presumes the bailee's negligence or other fault to be the cause, and casts on the bailee the burden of showing that the loss was due to other causes consistent with due care on his part, this rule being regarded as an application of the principle of res ipsa loquitur, and if the bailee does not sustain such burden the bailor becomes entitled as a matter of law to a verdict in his favor.
"The effect of this modern rule is not to shift the ultimate burden of proof from bailor to bailee, but merely to shift the burden of proceeding or going forward with the evidence; the ultimate burden of establishing negligence is on the bailor and remains on him throughout the trial.
"In order to throw the burden of evidence on the bailee it is sufficient that the bailor has shown damage to the bailed article that ordinarily does not happen where the requisite degree of care is exercised.
"* * * but the bailee may overcome this presumption by showing that *265 the loss occurred through some cause consistent with due care on his part, in which case he is entitled to the verdict unless the bailor affirmatively proves to the satisfaction of the jury that the loss would not have occurred but for the negligence of the bailee.
"* * * In any event, the presumption of negligence arising from the bailee's failure to return bailed property is rebutted by proof that the goods were lost or destroyed by causes beyond his control, as by an inevitable accident, and both fire and theft are ordinarily so classified as hereinafter will be seen."
Contributory negligence is a defense which must be specially pleaded, and such a plea must be affirmatively established in order to prevail, unless it be shown by evidence relied upon by the plaintiff and when not so shown will not be presumed. Its pleader carries the burden of proving all facts necessary to its establishment to a legal certainty. United States Fidelity & Guaranty Co. v. McCullough, 5 Cir., 202 F.2d 269, certiorari denied 346 U.S. 868, 74 S.Ct. 108, 98 L.Ed. 378; Aymond v. Western Union Telegraph Co., 1922, 151 La. 184, 91 So. 671; Ernst v. New Orleans Public Belt R.R., La.App. 1951, 55 So.2d 657; Hecht v. Toye Bros. Yellow Cab Company, La.App., 62 So.2d 520; Sustendal v. Weber, La.App.1954, 76 So.2d 8; Bransom v. Lafargue, La.App.1955, 78 So.2d 421; Stevens v. Guillemet, La.App.1955, 81 So.2d 94.
Our jurisprudence requires of the complainant that he demonstrate that the act of negligence charged be the proximate cause of the injury. This condition is met by establishing a causal connection by a natural and unbroken sequence without intervening efficient causes between the negligence and the injury, and if, in the sequence of events between the original negligence and the injury, an entirely independent cause intervenes and is itself sufficient to stand as the cause of the accident, the second cause is the "proximate cause", and the other the "remote cause", of the accident. Picou v. J. B. Luke's Sons, La.App.1942, 11 So.2d 38, affirmed, 1943, 204 La. 881, 16 So.2d 466; Frazier v. Ayres, La.App. 1945, 20 So.2d 754; Kendall v. New Orleans Public Service, La.App.1950, 45 So.2d 541.
While plaintiff with three companions was en route from California to Washington, D.C., by way of Shreveport and New Orleans, on September 5, 1954 he stopped in Coushatta at a filling station owned and operated by defendant. Instructions were given that his automobile, a 1951 Plymouth, be lubricated and the oil changed, and after this was accomplished Kern and his companions, all of whom were medical students, proceeded southward along U. S. Highway 71 toward Clarence, the car being driven by William Draisin. When nearing Clarence, which is approximately 25 miles distant from Coushatta, plaintiff, who was seated on the rear seat of the vehicle, noticed what he thought was dust or smoke arising from the floor of the car and requested the driver to pull to the side of the road and check for trouble. Two of the occupants inspected underneath the car and observed some oil on the exhaust pipe. Plaintiff concluded this was causing the smoke observed and was perhaps due to carelessness during the lubricating job at the Bumpas station, and was not considered significant. When the party arrived at Clarence Draisin stopped the car at a Texaco Service Station, where Richard O. Thompson was employed. Some water was secured, it being the testimony of Kern and Arnon Fortgang, one of the occupants of the vehicle, that Draisin thought it advisable to cool the fuel pump to prevent vapor lock due to the hot weather condition. Both Kern and Fortgang denied they received any service other than securing some water. The car then proceeded several miles below *266 Clarence, where the engine became so hot it "froze". The car was then pushed back to Clarence, at which place it was discovered the drain plug was missing and all of the oil was gone. The motor was ruined and required replacement. Defendant was notified and after his refusal to properly compensate plaintiff for his loss, this action was instituted.
The evidence discloses beyond serious dispute the damage incurred by plaintiff's automobile was due to heat when the oil leaked out due to the drain plug having become loosened. It was established by undisputed testimony the plug was missing when the vehicle was returned to Clarence. In our opinion the doctrine of res ipsa loquitur has application. After leaving defendant's service station, the car was driven along a paved road for not more than 30 miles before the engine ceased to run. In the absence of convincing evidence to the contrary, it logically follows that the drain plug was insecurely fastened when the vehicle left defendant's station and gradually became loosened from vibration as the car proceeded along the paved highway and finally dropped out of its socket. There is no evidence in any wise indicating the plug was knocked off by contact with some object or an uneven surface of the road. Nor was it shown the drain plug was tampered with or subjected to the control of anyone after the car departed from defendant's service station. The presumption of negligence thus arises and requires the bailee to show the loss occurred through some cause consistent with due care on his part or through some intervening cause beyond his control.
The defendant sought to meet his legal responsibility through the testimony of his attendant, James Homer Miller, who testified he replaced the drain plug and tightened it securely before he filled the automobile with oil. Further testimony was tendered by the defendant who stated that it was his custom to inspect vehicles which had been serviced prior to placing the sticker for recording date and mileage, and the nature of the service rendered. It seems, however, that Mr. Bumpas did not check the Plymouth automobile due to the fact plaintiff or the driver of plaintiff's car had not left the keys to the car after it was placed on the grease rack. Further testimony was to the effect that after the oil change was made, the car was pushed from the rack to a place where it remained some twenty minutes or more before it was moved by plaintiff or one of his friends and an inspection of the ground disclosed no oil leakage. In our opinion this testimony does not go far enough, for if the drain plug was insecurely tightened, it would not necessarily drip oil. It seems likely, we think, that there was only a slight leakage of oil, or none at all, until the plug became progressively loosened after it left Coushatta until it fell off. Bumpas and Thomas, a deputy sheriff, testified that after being informed by Kern of the damage to his automobile, they drove along the highway looking for oil spots and to see if they could find the drain plug. They both testified they observed an oil spot which indicated a half gallon or more of oil had been discharged. The evidence, we think, firmly establishes the act of negligence of defendant's employee in not sufficiently tightening the oil drain plug. The argument made by counsel for appellee that the threads of the plug might have been worn is disproved by evidence the car had just traveled from Berkeley, California, to Coushatta, a distance of 2.124 miles, with the oil being changed at Berkeley, and at Grants, New Mexico, prior to reaching Coushatta. Kern's testimony also shows that only three quarts were added. Furthermore, Miller testified the car had adequate oil when he began to service it. When the car reached Coushatta the motor had been driven approximately 32,000 miles and the car was approximately three years old. The evidence is insufficient to show the threads on the plug were worn or that the engine was not in good condition.
*267 Defendant's special defenses have not been established. His first contention is that plaintiff or plaintiff's driver was negligent in not observing the instrument panel which could have timely indicated the oil was being drained from the cylinders and, therefore, was a warning to plaintiff to carefully inspect the car. The testimony, as above indicated, shows that after leaving Coushatta and when the Plymouth car had almost reached Clarence, smoke or dust was observed coming from the floor, whereupon the car was pulled to the side of the road and two of the occupants thereof inspected its underside. It was concluded some smoke from the oil was being caused by grease carelessly left on the exhaust pipe during the lubrication job at the Bumpas station. After this decision they proceeded without further anxiety. We cannot say this was an unusual or unreasonable conclusion. Kern testified that after commencing their journey the smoke or dust did not recur. And further, plaintiff and Fortgang testified that when they observed the gauges on the instrument panel a shortage of oil was not indicated. It is possible the dangerous condition was not noticeable before the plug dropped out and after that the motor quickly heated and ceased to run. This time interval may have been short. The evidence on this phase of the case is unsatisfactory and appellee has not proven to our satisfaction plaintiff was warned of or should have observed the dangerous condition in time to avoid the mishap.
The stop made at Clarence is explained by Kern and Fortgang. They testified the driver of the car, Draisin, entered the Texaco station solely to secure water after Draisin had suggested that because of hot weather the fuel pump should be cooled off by water to prevent vapor lock. These witnesses say no other service was obtained and one of the party closed the hood and they left. This testimony directly contradicts that of the station attendant, Thompson, who said he examined the oil gauge and informed one of the group the oil stick showed no oil. Thompson quotes the party as saying: "It's O. K.", and then testified: "So I just closed the hood down. I wasn't going to make him buy any oil." We confess to doubt as to the accuracy of Thompson's testimony, but even if accepted, it is apparent the person addressed did not understand the motor was out of oil. It is beyond our comprehension a motorist would leave a filling station where oil was readily obtainable after being informed his oil gauge indicated no oil. Under the circumstances related by Thompson we wonder whether Thompson was derelict in not repeating the information until the importance of his discovery was understood.
The effect of our findings is to hold appellant is entitled to recovery, having proven negligence on the part of defendant's employee in failing to securely fasten the drain plug while servicing the Plymouth automobile, and further, because defendant did not discharge the burden of proof required for establishing the defense of contributory negligence relied upon.
We conclude, therefore, that defendant has failed to make out his charges of contributory negligence and having failed to do so, the responsibility for damage incurred by plaintiff's automobile must be affixed upon the defendant.
Plaintiff has clearly shown he is entitled to recover the sum of $350.11, which represents the bill of the Scott Motor Company for installing a new motor. Plaintiff claims further the sum of $7.50 for towing charge and $100 for inconvenience, mental pain, worry, anguish and loss of use of the automobile. These charges, in our opinion, are not sufficiently substantiated to justify our recognition and accordingly are rejected.
It follows from the reasons hereinabove set forth that the judgment from which appealed should be annulled, reversed and set aside, and judgment rendered in favor of plaintiff. It is, therefore, ordered, adjudged and decreed that there be judgment *268 in favor of plaintiff, Thomas G. Kern, and against the defendant, Claude W. Bumpas, in the sum of $350.11, together with five per cent per annum interest from judicial demand until paid, and for all costs, including costs of this appeal