CULPEPPER, Judge.
Plaintiffs, Eula Crayton and her husband, seek damages for personal injuries sustained when the automobile which she was driving was struck by an automobile driven by the defendant, Mary Sliman. The district judge awarded Mrs. Crayton $2,500 in general damages and $1,750 for six months loss of earnings. He awarded Mr. Crayton $1,037.58 for medical expenses. The total award is $5,287.58. The plaintiffs appealed, seeking an increase in the award. The defendants also appealed seeking principally an elimination of the award for medical expenses, since these were paid by the workmen’s compensation carrier.
The general facts are that on April 12, 1971 Eula Crayton was driving in the left-hand lane of a one-way street approaching an intersection in the City of Alexandria. The defendant, Mary Sliman, was driving in the right-hand lane and attempted to make a left turn at the intersection. As she did so, the left front door of her automobile struck the right front of the Crayton vehicle. The impact was not severe. The district judge found the accident was caused solely by the negligence of the defendant, Mary Sliman, and defendants do not raise the issue of negligence on appeal.
At the time of the impact, Eula Crayton was thrown against the left front door of her automobile. Although she stated to the investigating officers that she was not injured, she went on the day of the accident to see Dr. Paul M. Davis, Jr., an orthopedic surgeon of Alexandria. This physician found swelling in the left elbow and shoulder and a “mild cervical sprain”. He prescribed a Queen Anne collar and drugs for pain and muscle relaxation.
Dr. Davis explained the meaning of the term “mild cervical sprain” as follows:
“I would describe it as this way — a mild sprain is where motion has been forced in the neck where the motion has been restricted over several years, and say at the time of the accident the motion was forced which may have torn the ligaments a little bit, and may have injured the spurring in the neck a little bit — this is the type thing I’m talking about— you’ve got a little breaking of blood vessels around the neck, maybe in the muscles — motion went further than it had been accustomed to doing, and in doing that it tore a little something. But there was no dislocation, and there was no subluxation, and no fractures, and no ruptured discs.”
Dr. Davis continued to see and treat Mrs. Crayton from the date of the accident on April 12, 1971. The neck injury improved sufficiently .that plaintiff stopped wearing her collar in June of 1971. At that time plaintiff had full motion of the neck and no neurological problems. However, she continued to have tendonitis of the rotator cuff of the left shoulder, which caused pain on abduction of the arm beyond 90 degrees. Intermittently, she had muscle spasm in the shoulder. At times she had full motion of the arm and at times it was restricted. Many physical therapy treatments were administered from the time of the accident down to September of 1972, principally for the shoulder complaints.
On April 14, 1972, which was approximately one year post injury, Dr. Davis discharged plaintiff as being able to return to work, and she did so. However, in July of 1972 the tendonitis of her shoulder flared up requiring cortisone injections. These injections were apparently successful and plaintiff soon thereafter returned to work as a cook in a day care school.
When Dr. Davis saw plaintiff the last time, on January 16, 1973, she had been working. He found her neck injury recovered but stated that the shoulder might *577 still give some pain on abduction beyond the 90 degrees, and that this could give trouble for two or three more years. But Dr. Davis thought that she could continue to work.
At the request of the defendant insurer, Mrs. Crayton was examined by Dr. Ray J. Beurlot, Jr., an orthopedic surgeon of Alexandria, on September 9, 1971, which was about five months post injury. He diagnosed cervical sprain and tendonitis of the rotator cuff of the left shoulder. He saw her again on November 6, 1971 and found no change. On both of these examinations, it was Dr. Beurlot’s opinion that plaintiff could return to work as a cook. It was also his opinion that she would recover without any residuals. Her only impairment at the time he saw her was that she could not lift her arm over 90 degrees without discomfort in the rotator cuff of the shoulder.
The district judge gave the following reasons for judgment as to the quantum of the award:
“The injury to the plaintiff was not great, at most it was moderate. She stated to the police officer that she was not injured, that she was just nervous.
“The Court feels that the sum of $2,500 is more than adequate for the pain and suffering sustained by the plaintiff.
“Medical and related expenses amount to $1,037.58.
“At the time of the accident the plaintiff was employed as a cook at the rate of $278.00 per month. Her position was raised to $300 a month in June of 1971. The Court is of the opinion that the plaintiff could have returned to work in at least 6 months. An award of $1,750 is adequate for the loss of earnings sustained by the plaintiff.”
Further evidence which the district judge could have considered, is that at the time of the accident plaintiff was receiving a gross salary of $278 per month and, after deductions, was receiving monthly take-home pay of $240. After the accident she received workmen’s compensation benefits which averaged $194.35 per month, plus $150 per month for a period of one year under a disability policy. This meant that following the accident she received a total of $344.35 a month, without any deductions. And she returned to work in April of 1972, which was about one year post-injury and was about the time she stopped receiving the disability insurance. The trial judge could have weighed these facts in evaluating her motivation to return to work.
There is some conflict in the testimony of Dr. Davis and Dr. Beurlot. Generally, Dr. Davis thought plaintiff’s injuries were more severe and more prolonged than did Dr. Beurlot. However, under all of the circumstances, we find no abuse of the great discretion which the trial judge has in fixing the amounts of awards in personal injury cases.
In its appeal, the defendant insurer contends plaintiffs should not have been awarded medical expense in the sum of $1,037.58. Mrs. Crayton testified these expenses have been paid by her workmen’s compensation insurer. Defendant argues that since plaintiffs have not paid the medical expenses and are not obligated to pay them, they cannot recover such damages in this action against the tort feasor.
LSA-R.S. 23:1101-23:1103 are controlling here. These statutes provide that when an employee’s work-injury creates in a third person “a legal liability in respect thereto”, both the employee and the employer may sue the third person to recover damages for the injury, and the payment of *578 compensation shall not affect the employee’s action against the third person nor be regarded as establishing a measure of damages for the injury, Section 1101. If either brings a suit, he must notify the other, and the other may intervene as plaintiff in the suit, Section 1102. In the event suit is brought by either and damages are recovered, such damages shall be apportioned in the judgment so that the employer’s claim for reimbursement is accorded preference, Section 1103.
In the present case, the employee filed suit against the tort feasor seeking damages, including medical expense. The record does not show whether the employee notified the employer. However, there is no intervention in these proceedings by the employer. Under these circumstances, the law is clear that the employee had a right to sue for all damages caused by the injury, including medical expense, regardless of whether the employer was obligated to pay, or actually did pay, these expenses, Ernst v. New Orleans Public Belt Railroad, 55 So.2d 657 (La.Orl.App.1952); Carlisle v. Employers Mutuals of Wausau, 220 So.2d 152 (La.App., 4th Cir. 1969). See also Crabtree v. Bethlehem Steel Corporation, La., 284 So.2d 545 (1973) which involved credit claimed by the employer for the amount of a compromise settlement made by the employee with the tort feasor, but the decision explains the rationale of the statutes involved and supports the result which we reach.
We conclude plaintiffs are entitled to judgment for the medical expenses.
For the reasons assigned, the judgment appealed is affirmed. Since both plaintiffs and defendants appealed, the costs of this appeal are assessed one-half to each.
Affirmed.